Filed 8/3/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL ARTHUR STEVENSON et al.,<br><br>    Defendants and Appellants. | A143337, A143415, A143477<br><br>(Alameda County<br>Super. Ct. No. CH54908) |

Defendants Paul Arthur Stevenson, Aaron Isiah Stewart, and Anthony Alvin Perry appeal judgments convicting them of three counts of first degree murder and four counts of premeditated attempted murder. On appeal, they contend the trial court made instructional errors that require reversal of their convictions. In his briefing, Stewart argues that the court erred by instructing the jury it could convict defendants of first degree murder under the natural and probable consequences theory and by failing sua sponte to instruct on assault with a firearm as a lesser included offense of murder and attempted murder. In his briefing, Stevenson argues that the court erred in instructing the jury regarding motive evidence and the "kill zone" theory of liability of attempted murder. Each defendant has joined in the arguments made by their codefendants. We find no error and shall affirm the judgments.

**Factual and Procedural Background**

The Alameda County District Attorney filed an amended information charging defendants with three counts of first degree murder with multiple murder special

1

circumstances (Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(3); counts 1, 2, 3) and four counts of premediated attempted murder (§§ 187, subd. (a), 664; counts 4-7). The amended information alleges that each defendant personally and intentionally discharged a firearm causing great bodily injury and death in the commission of counts 1 through 6 (§ 12022.53, subds. (b), (c), (d), (g); § 12022.5, subd. (a); § 12022.7, subd. (a)) and that they personally discharged a firearm in connection with count 7 (§ 12022.53, subds. (c), (g); § 12022.5, subd. (a).) The amended information also alleges that defendants personally inflicted great bodily injury in connection with counts 4 through 6. (§ 12022.7, subd. (a)). In addition, the amended information alleged that Stevenson was released on bail when he committed the offense (§ 12022.1) and that Perry had served a prior prison term (§ 667.5, subd. (b)).[2]

Defendants do not challenge the sufficiency of the evidence in support of their convictions. Therefore, the following is a summary of the facts sufficient to provide context for the analysis of the instructional errors raised by defendants.

On October 1, 2011, Erica Brown, Shanice Keil, Laneasha Northington, Ikaneasha Johnson, Joshua Alford, Anthony Ewing, and Ryan Gibbs attended a party in San Leandro. Alford was a member of the F.E. ("Fuck Everybody") group, which was described by witnesses as a "social group" of individuals who make raps on YouTube.

Defendants also attended the party with a group of their friends. Defendants were members, or "fans," of the Mob Squad, which was described by a police witness as an "informal" street gang with members who compose rap music.

When the party ended around midnight, the seven victims got into a Ford Explorer and prepared to leave the parking lot. As they tried to back out of their parking spot, a white sedan pulled behind the Explorer and blocked its path. Within a minute, multiple gunshots were fired into the car.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] A fourth defendant, Stanley Turner, was charged with the same offenses and enhancements. Prior to trial, he plead guilty to being an accessory (§ 32) in return for his agreement to testify truthfully at trial.

2

Brown testified that gunshots were coming from the front and the back of the car, sounding "like they were coming from around the whole car." She heard "different sounds coming from two different directions" and the sounds of glass breaking and metal hitting metal. The gunfire lasted for about a minute.

Six of the seven victims were shot during the attack. Keil, Northington and Alford died as a result of their injuries. Police investigators located 10 bullet holes in the exterior of the Explorer. Both of the driver's side windows and the rear passenger side window were shattered.

Brown and a second witness identified Stevenson as one of the shooters. Gibbs identified Stewart as another shooter. Another witness, who was at the party with defendants, told police that he saw Perry and Stewart shooting at the car.

After the shooting, defendants regrouped at a friend's house. At that time, all three defendants made statements acknowledging their participation in the shooting. In a statement to police after his arrest, Stewart admitted pulling the trigger three times, but he claimed the gun did not fire but only "click[ed]."

Stanley Turner testified that he had given Stewart his handgun prior to the shooting and that Stewart returned it to him after the shooting. Turner also testified to the source of the animosity between Alford and defendants. According to Turner, an incident occurred at a prior party in San Francisco when Stevenson bumped into an F.E. member or an F.E. member bumped into Stevenson. The dispute escalated with members of both groups pulling out their guns. Alford was with the F.E. group that night. No shots were fired and there were no more confrontations between defendants and the F.E. members after that evening, "[b]ut every time we seen them, [there] was animosity. It wasn't pleasant."

The jury convicted defendants on counts 1 through 3 as charged and found true the special circumstances allegations, and the firearm use and great bodily injury enhancements. The jury also convicted defendants on counts 4 through 7 as charged in the amended information and found the corresponding enhancements true.

The court sentenced each defendant to three consecutive terms of life in prison without the possibility of parole on counts 1 through 3, with consecutive enhancements of 25 years to life for the firearm use. The court imposed concurrent 15-year terms on counts 4 through 7, and concurrent firearm enhancements of 25 years to life on counts 4 through 6. This court consolidated the three appeals.

## Discussion

**1.** ***The jury was properly instructed on first degree murder***.

The jury was instructed on three theories of murder as to counts 1, 2, and 3: direct liability as a perpetrator under CALCRIM No. 520,[3] direct aiding and abetting of murder under CALCRIM No. 401,[4] and murder based on the natural and probable consequences

---

[3] The jury was instructed pursuant to CALCRIM No. 520 as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] [The] defendant acted with express malice if he unlawfully intended to kill. [¶] [The] defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life. [¶] . . . [¶] An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. *A natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. . . ."

[4] The jury was instructed pursuant to CALCRIM No. 401 that a defendant is guilty of murder based on aiding and abetting if "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime: [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

4

of conspiracy to murder Alford under CALCRIM No. 417.[5] The jury also was instructed under CALCRIM No. 402 that defendants could be found guilty of murder on counts 1 and 3 if those killings were the natural and probable consequences of aiding and abetting the murder of Alford.[6] In addition, the jury was instructed under CALCRIM No. 521 that "A defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. A defendant acted *willfully* if he intended to kill. A defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. A defendant acted with *premeditation* if he decided to kill before completing the acts that caused death. [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this

---

[5] The jury was instructed pursuant to CALCRIM No. 417 that "To prove that the defendant is guilty of the crimes charged in counts 1, 2, [and] 3 . . . , the People must prove that: [¶] 1. The defendant conspired to commit one of the following crimes: the murder of Josh Alford; [¶] 2. A member of the conspiracy committed the murder of Shanice Keil and Laneasha Northington . . . to further the conspiracy; [¶] AND [¶] 3. The murders of Shanice Keil and Laneasha Northington . . . were a natural and probable consequence[] of the common plan or design of the crime that the defendant conspired to commit."

[6] The jury was instructed pursuant to CALCRIM No. 402, as follows: "The defendants are charged in count 2 with the murder of Joshua Alford and in counts 1 and 3, respectively, with the murders of Shanice Kiel and Laneasha Northington . . . . [¶] You must first decide whether the defendant is guilty of the murder of Joshua Alford. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of the crimes charged in counts 1 [and] 3 . . . . [¶] Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is guilty of the murders charged in counts 1 and 3 . . . , the People must prove that: [¶] 1. The defendant is guilty of the murder of Joshua Alford as charged in count 2; [¶] 2. During the commission of the murder of Joshua Alford a coparticipant in that murder committed the crime of murder as charged in counts 1 and 3 . . . ; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murders of Shanice Kiel and Laneasha Northington . . . were a natural and probable consequence of the commission of the murder of Joshua Alford."

burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder."

Defendants contend that these instructions improperly allowed the jury to find them guilty of first degree murder under the natural and probable consequence doctrine in violation of *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*). Although the Attorney General initially conceded error, which it argued was harmless, following oral argument and the submission of supplemental letter briefs, the Attorney General now submits that the instructions were entirely proper.

In *Chiu, supra,* 59 Cal.4th 155, the Supreme Court held that while a defendant may be found guilty of second degree murder under the natural and probable consequence doctrine, a defendant may not, as a matter of law, be found guilty of first degree murder under the natural and probable consequence doctrine. The court explained, " ' "A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime." ' [Citations.] 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' " (*Id.* at p. 161.) "In the context of murder, the natural and probable consequences doctrine serves the legitimate public policy concern of deterring aiders and abettors from aiding or encouraging the commission of offenses that would naturally, probably, and foreseeably result in an unlawful killing. A primary rationale for punishing such aiders and abettors— to deter them from aiding or encouraging the commission of offenses—is served by holding them culpable for the perpetrator's commission of the nontarget offense of second degree murder." (*Id.* at p. 165.) "[T]his same public policy concern loses its force in the context of a defendant's liability as an aider and abettor of a first degree premeditated murder. First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation which trigger a heightened penalty.

6

[Citation.] That mental state is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death." (*Id.* at p. 166.) "Accordingly, we hold that punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine." (*Ibid.*) The court acknowledged, however, "Aiders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles. [Citation.] Under those principles, the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] Because the mental state component—consisting of intent and knowledge—extends to the entire crime, it preserves the distinction between assisting the predicate crime of second degree murder and assisting the greater offense of first degree premeditated murder. [Citation.] An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder." (*Id.* at pp. 166-167.)

In this case, as in *Chiu*, the jury was instructed on the natural and probable consequence doctrine.[7] This instruction allows the jury to find a defendant guilty of murder, but does not address the degree of that murder. The error recognized in *Chiu* was that the jury was instructed in accordance with CALCRIM No. 521 that "to find defendant guilty of first degree murder, the People had to prove that the *perpetrator* acted

---

[7] In *Chiu*, *supra*, 59 Cal.4th at page 160, the jury was instructed with CALCRIM No. 403, which defines the natural and probable consequences doctrine in cases where only the non-target crime is charged. The relevant language is identical to CALCRIM No. 402, given in this case, which defines the natural and probable consequences doctrine in cases where both the target and non-target crimes are charged.

7

willfully, deliberately, and with premeditation." (*Chiu*, *supra*, 59 Cal.4th at p. 161, italics added.) CALCRIM No. 521 allowed the jury to find an aider and abettor guilty of first degree murder based on the perpetrator's premeditation and deliberation. In contrast, as CALCRIM No. 521 was modified in this case, it read, "A *defendant* is guilty of first degree murder if the People have proved that *he* acted willfully, deliberately, and with premeditation." (Italics added.) The instructions went on to explain that defendant "acted willfully if he intended to kill. [The] defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death." (*Chiu*, *supra*, at p. 161.) Finally, the instruction stated that "[i]f any juror is convinced beyond a reasonable doubt that the crime of murder has been committed by a defendant, but has a reasonable doubt whether the murder was of the first or of the second degree, that juror must give defendant the benefit of that doubt and find that the murder is of the second degree." (*Ibid*.) Thus, in this case, unlike in *Chiu*, the jury was required to find that each defendant committed the crimes with the required deliberation and premeditation before it could find that defendant guilty of first degree murder. The error identified in *Chiu* did not occur here.

   2. ***The court was not required to instruct on the lesser included offense of assault with a firearm.***

   "It is well established that even in the absence of a request, the trial court has a sua sponte duty to instruct on lesser included offenses when there is substantial evidence the defendant is guilty only of the lesser offense. [Citation.] This requirement is based upon the rule that 'the court must instruct sua sponte on "the 'general principles of law governing the case;' " i.e., those " 'closely and openly connected with the facts of the case before the court.' " ' " (*People v. Cook* (2001) 91 Cal.App.4th 910, 917.) "To determine whether a lesser offense is necessarily included in a greater charged offense, one of two tests must be met. [Citation.] The 'elements' test is satisfied if the statutory elements of the greater offense include all the elements of the lesser offense so that the greater offense cannot be committed without committing the lesser offense. [Citation.]

8

The 'accusatory pleading' test is satisfied if 'the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater [offense] cannot be committed without also committing the lesser [offense].' " (*Id*. at p. 918.)

In *Cook* the court confirmed that under the elements test "assault with a firearm is not a lesser included offense of murder." (*Cook, supra*, 91 Cal.App.4th at pp. 918-919.) The court held, however, that because the information charged defendants with conspiracy to commit murder by firearm and alleged the use of the firearm as an overt act, the crime of conspiracy to commit assault by means of a firearm was a lesser included offense of conspiracy to commit murder under the accusatory pleading test. (*Id*. at pp. 919-920.) Relying on *Cook*, defendants contend that the court had a sua sponte obligation to instruct the jury on conspiracy to commit assault with a firearm as a lesser-included offense of murder based on the uncharged conspiracy instructions given the jury in this case.

We disagree with defendants that *Cook* supports their argument. Unlike the situation in *Cook,* the amended information in this case does not charge defendants with a conspiracy to commit murder, much less with a conspiracy to commit murder by use of a firearm. Although the jury was instructed on the elements of conspiracy that may render a co-conspirator guilty of the underlying offense, the offense charged and tried was not conspiracy to murder. The accusatory pleading thus did not give defendants notice of lesser included offenses included in a conspiracy charge, and such lesser included offenses could not properly be included in the instructions. (See *Cook, supra*, 91 Cal.App.4th at p. 921 ["To the extent an accusatory pleading fails to allege overt acts sufficient to give notice of a lesser included offense, the trial court may not rely on the pleading as a basis to instruct on lesser included offenses not included in the allegations of that pleading."].) The evidence of an uncharged conspiracy presented at trial does not give rise to a lesser included offense. (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1399 ["Evidence of crimes outside those expressly or impliedly raised by the pleadings does not create a lesser included offense where one does not otherwise exist. . . . If other

9

offenses are not under the law 'included' in the charged offense, mere evidence of those offenses does not give them life as a lesser included offense."].)

Moreover, as the Attorney General argues, even if assault with a firearm were a lesser included offense, the court would have been under no obligation to so instruct because there is no substantial evidence in the record to support a finding by the jury that defendants were guilty of assault with a firearm but not murder. (*People v. Avila* (2009) 46 Cal.4th 680, 705 [" 'even on request, the court "has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction" ' "].) The primary dispute at trial was over the number of shooters and their identities. There was no dispute that the shooters ambushed and intentionally fired their guns into the car. That act at a minimum established implied malice sufficient to establish the commission of murder. Under no circumstances did the court have a sua sponte obligation to instruct on assault with a firearm as a lesser included offense.[8]

### 3. *The jury was properly instructed on the "kill zone" theory of attempted murder*.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) " '[I]t is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may . . . be inferred from the defendant's acts and the circumstances of the crime.' " (*People v. Avila*, *supra*, 46 Cal.4th at p. 701.) The "kill zone theory . . . addresses the question of whether a defendant charged with the murder or attempted murder of an intended target can *also* be convicted of attempting to murder other, nontargeted, persons." (*People v. Stone* (2009) 46 Cal.4th 131, 138.) "[A]lthough the intent to kill a primary target does not *transfer* to a [nontargeted] survivor, the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within what [is]

---

[8] Defendants argument that the court erred in failing to instruct on assault with a firearm as a lesser included offense to attempted murder, also based on a misreading of *Cook, supra*, 91 Cal.App.4th 910, fails for the same reason.

10

termed the 'kill zone.' " (*People v. Bland* (2002) 28 Cal.4th 313, 329.) A concurrent intent to kill nontargeted victims may be inferred when the defendant uses lethal force calculated to kill everyone within an area around the intended target as a means of ensuring the target's death. (*Id.* at pp. 329-330) Firing multiple shots directly at a small group at close range will give rise to a reasonable inference that the shooter intended to kill all in the group. (*People v. Garcia* (2012) 204 Cal.App.4th 542, 554.)

The jury was instructed pursuant to CALCRIM No. 600 in relevant part as follows: "The defendants are charged in counts 4, 5, 6 and 7 with attempted murder. [¶] To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill a person. [¶] . . . [¶] A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of Ryan Gibbs, Ikaneasha Johnson, Erica Brown or Anthony Ewing, the People must prove that a defendant not only intended to kill Joshua Alford but also either intended to kill Ryan Gibbs, [Ikaneasha Johnson], Erica Brown or Anthony Ewing, or intended to kill everyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Ryan Gibbs, [Ikaneasha Johnson], Erica Brown or Anthony Ewing or intended to kill Joshua Alford by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Ryan Gibbs, Ikaneasha Johnson, Erica Brown or Anthony Ewing."

Defendants contend the above instruction is ambiguous and was reasonably likely to be misapplied by the jury. (*People v. Friend* (2009) 47 Cal.4th 1, 79 ["When reviewing a claim based on assertedly ambiguous instructions, we inquire whether the jury was reasonably likely to have construed them in a manner that violates the defendant's rights."].) Defendants argue the instruction could have been interpreted by the jury as allowing it to convict defendants of all four counts of attempted murder "*either* if they intended to kill everyone in the 'particular zone of harm' at issue in the case, *or* if they intended to kill Joshua Alford and at least one of the victims of the attempted murder

11

counts." This later theory, they argue, allowed "for conviction on something less than the required mens rea of express malice aforethought or intent to kill" each victim.

We do not agree that a reasonable juror could interpret the instruction in the tortured manner suggested by defendants. There is no likelihood that the jury would have, for example, convicted defendants of the attempted murder of Ryan Gibbs based on a finding that defendants intended to kill Alford and Anthony Ewing but not everyone in the kill zone. Moreover, by agreeing to the instruction and failing to request a clarifying instruction, defendants have forfeited this argument on appeal. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503 ["A party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial."].)

### 4. *The jury was properly instructed on motive*.

The jury was instructed pursuant to CALCRIM No. 370 as follows: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty." Defendants do not dispute that this is a correct statement of the law. They contend, however, that when, as in this case, "a finding of guilty depends, or can be seen by the jury as depending, on a chain of circumstantial inferences, one link of which is motive," the standard motive instruction conflicts with CALCRIM No. 224. CALCRIM No. 224 advises the jury, "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt." In other words, defendants suggest that when the prosecution in a murder case relies on motive as circumstantial evidence that the defendant acted with an intent to kill, the People are required to prove that motive beyond a reasonable doubt as a "fact essential to that conclusion."

12

The motive or "reason" a person chooses to commit a crime is not an element of the offenses of murder or attempted murder. (*People v. Hillhouse*, *supra*, 27 Cal.4th at p. 504.) While evidence of defendants' motive may have persuaded the jury that they were more likely to be guilty, nothing rendered the defendants' motive necessary to prove their guilt. CALCRIM No. 370 instructs the jury on the relevancy of motive evidence and CALCRIM No. 224 instructs on the burden of proof with regard to circumstantial evidence; there is no conflict between these instructions. (See *People v. Ibarra* (2007) 156 Cal.App.4th 1174,1193 ["CALCRIM No. 370 instructs on motive . . . not on burden of proof. The charge to the jury elsewhere instructed that the defendant is presumed innocent, that the defendant does not have to prove he or she is not guilty, and that the prosecution has the burden of proof beyond a reasonable doubt."].)

## Disposition

The judgments are affirmed.

Pollak, J.

We concur:

Siggins, P.J.
Jenkins, J.

Trial court:                        Alameda County Superior Court

Trial judge:                        Honorable Kevin Murphy

Counsel for defendants and appellants:    Mark David Greenberg in case No. A143337
                                    David Y. Stanley in case No. A143415
                                    Eric S. Multhaup in case No. A143477

Counsel for plaintiff and respondent:    Kamala D. Harris and Xavier Becerra, Attorneys
                                    General, Gerald A. Engler, Chief Assistant Attorney
                                    General, Jeffrey M. Laurence, Senior Assistant
                                    Attorney General, Eric D. Share, Supervising Deputy
                                    Attorney General, and Christopher W. Grove and
                                    Donna Marie Provenzano, Deputy Attorneys General

A143337, A143415, A143477