Filed 9/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re CESAR LOZA<br><br>on Habeas Corpus. | G054978<br><br>(Super. Ct. Nos. 04HF0309, M16964)<br><br>O P I N I O N |

Original proceedings; petition for a writ of habeas corpus after a judgment of the Superior Court of Orange County, James P. Marion, Judge. Petition granted. Petitioner's request for judicial notice denied; respondent's request for judicial notice granted.

Cynthia M. Jones, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Annie Featherman Frasher and Lynne G. McGinnis, Deputy Attorneys General, for Respondent.

\*　　　　\*　　　　\*

In 2004, Cesar Loza handed a gun to a fellow gang member, who shot and killed a rival gang member. A jury convicted Loza of first degree premeditated murder after being instructed on two derivative liability theories: direct aider and abettor liability, and the natural and probable consequences theory. In 2014, our Supreme Court held that the natural and probable consequences theory can no longer support a premeditated murder conviction. (*People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*).)

In this habeas corpus proceeding, we cannot conclude beyond a reasonable doubt that the jury relied on the legally valid direct aider and abettor liability theory; therefore, we must vacate Loza's first degree murder conviction. On remand, the prosecution may retry Loza for first degree murder (with proper jury instructions), or accept a second degree murder conviction. We also order the trial court to stay Loza's sentence on a substantive gang offense and to conduct a hearing, allowing the parties to make a record for any future youth related parole reviews. (*People v. Franklin* (2016) 63 Cal.4th 261, 269 (*Franklin*).)

I

FACTS AND PROCEDURAL BACKGROUND

On February 27, 2004, a group of Family Mob (FM) criminal street gang members approached Loza, a member of Southside Raza (SSR), a rival Orange County gang.[1] The FMs chased Loza into his apartment, where he lived with his mother and his brother Luis Loza (Luis), who was also SSR. The FMs stood outside of the apartment, while taunting and threatening to kill Loza. Luis and Loza yelled at the FMs, telling

---

[1] The facts are taken from this court's unpublished opinion in Loza's initial appeal. (*People v. Andrade et al.* (April 9, 2007, G035759) [nonpub. opn.].) We grant the Attorney General's request to take judicial notice of that unpublished opinion. We deny Loza's request to take judicial notice of the Third District Court of Appeal's unpublished opinion in *People v. Chiu* (April 23, 2012, C063913 [nonpub. opn.]).

2

them to stop "disrespecting" their house.  Eventually, the rival FM gang members left in their cars.

The Loza brothers wanted to retaliate and began calling other SSR gang members and affiliates, explaining the perceived "disrespect" of their house.  A group of SSRs eventually met up outside at the apartment complex, including Oscar Andrade, Peter Rizo, and Oscar Flores.  Loza had a knife, Rizo had an aluminum baseball bat, and Flores was armed with a .38 caliber semi-automatic handgun.  They waited on a grassy knoll overlooking the parking lot and scanned the area for FMs.

A group of FMs eventually showed up.  They carried baseball bats, brass knuckles, and a knife.  As the FMs climbed out of their cars, the SSRs descended on them.  At one point, Flores passed his gun to Loza, but it failed to work when Loza tried to shoot it.  During the ensuing melee, Loza then passed the gun to Andrade who turned and fired into Edward Mauricio Rendon's chest, killing him.

Loza, Luis and Andrade were under 18 years of age.  The prosecution filed murder and related charges against Loza, Luis, Andrade, and Rizo in "adult" criminal court.  The jury convicted Loza and the other defendants of first degree premeditated murder, a substantive gang offense, and found true the related gang and firearm enhancements.  The court sentenced Loza to a prison term of 50 years to life, including a two-year concurrent sentence for the substantive gang offense.


II

DISCUSSION

Loza contends the trial court committed a prejudicial instructional error, his concurrent sentence for the substantive gang offense should be stayed, and he is entitled to a hearing to present evidence for use in a future youthful offender parole hearing.  We shall address each contention in turn.

3

*A. Instructional Error*

We review instructional error claims de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) We determine whether the trial court fully and fairly instructed the jury on the applicable law. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) When making this determination, we consider the instructions taken as a whole; we also presume jurors are intelligent people capable of understanding and correlating all of the instructions they were given. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, abrogated on another point by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

Loza argues that the instructions allowed the jury to convict him of premeditated murder based on a natural and probable consequences theory, or what is now commonly referred to as a "*Chiu* error." (*Chiu*, *supra*, 59 Cal.4th 155.) We agree.

*1. Applicable Law*

Generally, a defendant may be convicted of a crime either as a perpetrator or as an aider and abettor. (Pen. Code, § 31.)[2] An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor can also be held liable for any crimes that were not intended, but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the "'"natural and probable consequences" doctrine.'" (*People v. Montes* (1999) 74 Cal.App.4th 1050-1055.)

In 2014, the California Supreme Court held that premeditation and deliberation "is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death."

---

[2] All further undesignated statutory references are to the Penal Code.

(*Chiu*, *supra*, 59 Cal.4th at p. 166.)  The Court held that under the natural and probable consequences theory "the connection between the [aider and abettor's] culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder."  (*Ibid*.)  Thus, an aider and abettor's liability for premeditated murder "must be based on direct aiding and abetting principles."  (*Id*. at p. 159)

In *Chiu*, *supra*, 59 Cal.4th at page 159, defendant participated in a fight between two groups.  During the brawl, defendant told his friend to "'[g]rab the gun.'" (*Id*. at p. 160.)  When the friend pointed the gun and hesitated, defendant said, "'shoot him, shoot him.'"  The friend shot and killed the victim.  The prosecution charged defendant with murder.  (*Ibid*.)  "At trial, the prosecution set forth two alternate theories of liability.  First, defendant was guilty of murder because he directly aided and abetted [his friend] in the shooting death . . . .  Second, defendant was guilty of murder because he aided and abetted [his friend] in the target offense of assault or of disturbing the peace, the natural and probable consequence of which was murder."  (*Ibid*.)

The trial court instructed the jury on both theories of aider and abettor liability.  (*Chiu*, *supra*, 59 Cal.4th at pp. 160-161.)  The jury was also instructed "that to find defendant guilty of first degree murder, the People had to prove that *the perpetrator* acted willfully, deliberately, and with premeditation, and that all other murders were of the second degree."  (*Ibid., * italics added.)  The Supreme Court reversed defendant's conviction for first degree murder and gave the prosecution the option of retrying defendant, or accepting a reduction to second degree murder.  (*Id*. at p. 168.)  The Court found that the jury may have convicted defendant on the legally invalid natural and probable consequences theory; that is, the Court could not "conclude beyond a reasonable doubt that the jury ultimately based its first degree murder verdict on . . . the legally valid theory that defendant directly aided and abetted the murder."  (*Ibid*.)

## 2. *The Relevant Instructions in This Case*

The trial court instructed the jury: "If any rule, direction, or idea [is] repeated or stated in different ways in these instructions, no emphasis [is] intended and you must not draw any inference because of its repetition. *Do not single out any particular sentence or any individual point or instruction and ignore the others.* Consider the instructions taken as a whole and each in light of all the others." (CALJIC No. 1.01, italics added.) Loza, Luis, Andrade and Rizo were tried together. The court instructed the jury: "The word 'defendant' applies to each defendant unless you are instructed otherwise." (CALJIC No. 1.11.)

The trial court instructed on the direct aiding and abetting theory of liability. The court told the jury: "A person aids and abets the [commission] . . . of a crime when he or she: (1) With knowledge of the unlawful purpose of the perpetrator, and (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and (3) By act or advice aids, promotes, encourages or instigates the commission of the crime." (CALJIC No. 3.01.) The court also instructed on the natural and probable consequences theory of aiding and abetting liability. The court told the jury that if they found that "the defendant" intentionally aided and abetted a target offense (breach of the peace, simple assault, exhibiting a firearm, or assault with a firearm), they could find "the defendant" guilty of a nontarget offense (murder, attempted murder, or one of the lesser-included offenses), provided that they also found that the nontarget offense was a natural and probable consequence of the target offense. (CALJIC No. 3.02.)

The trial court further instructed the jury on first degree murder: "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of *the defendant* to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion . . . it is murder of the first degree." (CALJIC No. 8.20, italics added.) The

6

instruction also stated: "To constitute a deliberate and premeditated killing, *the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to and does kill.*" (CALJIC No. 8.20, italics added.)

### 3. Analysis

Here, the trial court instructed the jury with a legally valid theory of first degree murder: direct aider and abettor liability. That is, the court's instructions told the jurors that they could find Loza guilty of premeditated murder if they found that he intentionally aided and abetted Andrade in the murder of Rendon. However, the court also instructed the jury with a (now) legally invalid theory of first degree murder: the natural and probable consequences doctrine. That is, the court's instructions told the jurors that they could also find Loza guilty of premeditated murder if they found that he intentionally aided and abetted Andrade in one of the target offenses (breach of the peace, simple assault, exhibiting a firearm, or assault with a firearm), and the nontarget offense (Rendon's murder) was a natural and probable consequence of one of the target offenses.

"'When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was actually based on a valid ground.'" (*Chiu*, *supra*, 59 Cal.4th at p. 176.) Here, the analysis is on all fours with *Chiu*. In this habeas review, we find no basis in the record to conclude beyond a reasonable doubt that the jury relied on the legally valid (direct aider and abettor) liability theory. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1218 ["on a petition for writ of habeas corpus, as on direct appeal, *Chiu* error requires reversal unless the reviewing court concludes beyond a reasonable doubt that the jury actually relied on a legally valid theory in convicting the defendant of first degree murder"].) Thus, we must vacate Loza's first degree murder conviction.

7

The Attorney General argues that there is no instructional error in this case, attempting to distinguish the trial court's jury instructions from those given in *Chiu*. He states: "The difficulty in *Chiu* arose because the *Chiu* trial court instructed the jury, with respect to first degree murder, that the 'perpetrator' must have had the requisite mental state, not the 'defendant.'" The Attorney General maintains that the first degree murder instruction used by the trial court in this case, "did not refer to the *perpetrator's* mental state. Instead, it referred to the 'defendant's' mental state . . . ." Thus, the Attorney General maintains that the jury could have found Loza "guilty of first degree murder only if it found [Loza] intended to kill Rendon and personally acted with premeditation and deliberation."

We disagree. We see two fundamental flaws with the Attorney General's argument.

The first problem is that the Attorney General's argument is premised on the notion that the jury must have equated the word "defendant" in the first degree murder instruction solely with Loza. But this was a joint trial of four defendants and one of the court's introductory instructions told the jury: "The word 'defendant' *applies to each defendant* unless you are instructed otherwise." (CALJIC No. 1.11, italics added.) That is, the jury could have interpreted the word "defendant" to mean any of the four defendants. So when the court instructed the jury that it had to find that the "defendant" premeditated and deliberated, the jury could have (and likely did) understand the word "defendant" to mean Andrade (as he was the shooter). (See also CALJIC No. 1.01 ["Consider the instructions taken as a whole and each in light of all the others"].)

The second problem with the Attorney General's argument is that the first degree murder instruction also told the jurors: "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to and does kill." (CALJIC No. 8.20, italics added.) That is, the jurors could have found

8

that Andrade (the slayer) premeditated and deliberated, but not necessarily Loza. In *Chiu*, *supra*, 59 Cal.4th at pages 160-161, the trial court instructed the jury "that to find defendant guilty of first degree murder, the People had to prove that *the perpetrator* acted willfully, deliberately, and with premeditation." (Italics added.) Here, the instructional error essentially mirrored the error that occurred in *Chiu*, but the court in this case used the word "slayer" instead of the word "perpetrator."

Finally, the Attorney General cites the recent case of *People v. Stevenson* (2018) 25 Cal.App.5th 974 (*Stevenson*). In *Stevenson*, three defendants were convicted of three counts of first degree murder along with related crimes and enhancements. (*Id*. at p. 978.) Among other claims on appeal, the defendants challenged their murder convictions on the basis that the court's "instructions improperly allowed the jury to find them guilty of first degree murder under the natural and probable consequence doctrine in violation of [*Chiu*, *supra*, 59 Cal.4th 155]." (*Id*. at p. 982.) The trial court had instructed the jury that: "'A *defendant* is guilty of first degree murder if the People prove that *he* acted willfully, deliberately, and with premeditation.'" (*Id*. at p. 983.) The appellate court contrasted this jury instruction with that in *Chiu*: "'to find the defendant guilty of first degree murder, the People had to prove that the *perpetrator* acted willfully, deliberately, and with premeditation.'" (*Ibid*.) The court concluded that "in this case, unlike in *Chiu*, the jury was required to find that *each defendant* committed the crimes with the required deliberation and premeditation before it could find *that defendant* guilty of first degree murder. The error identified in *Chiu* did not occur here." (*Id*. at p. 984.)

But again, the trial court in this case generally instructed the jury that: "The word 'defendant' applies to each defendant unless you are instructed otherwise." (CALJIC No. 1.11.) And further, the court's first degree murder instruction told the jury that: "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to and does kill." (CALJIC No. 8.20, italics added.)

Unlike *Stevenson*, the court's instructions here allowed the jurors to find the defendant (Loza) guilty of first degree murder if they found that one of the other three defendants—the "slayer" Andrade—deliberated and premeditated. This is precisely the type of instructional error that our Supreme Court identified and found unacceptable in *Chiu*, *supra*, 59 Cal.4th 155.

### 4. Harmless Error Analysis

In the alternative, the Attorney General argues: "Even if there was instructional error under *Chiu*, the error was non-prejudicial." We disagree.

Again, the presumption is that we must reverse, *unless* we find the error harmless beyond a reasonable doubt. (*In re Martinez, supra,* 3 Cal.5th at p. 1225.) This analysis, of course, is very familiar to us. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) The prosecution "has the burden of proving beyond a reasonable doubt that the error did not contribute to the verdict." (*People v. Woods* (2006) 146 Cal.App.4th 106, 117.) This is a challenging burden: "The [*Chapman*] test is not whether a hypothetical jury, no matter how reasonable or rational, would render the same verdict in the absence of the error, but whether there is *any reasonable possibility* that the error *might have* contributed to the conviction in this case. *If such a possibility exists*, reversal is required." (*People v. Lewis* (2006) 139 Cal.App.4th 874, 887, italics added.) Under *Chapman*, we also take particular note of a prosecutor's closing arguments. (See *Kyles v. Whitley* (1995) 514 U.S. 419, 444 ["[t]he likely damage is best understood by taking the word of the prosecutor, . . . during closing arguments . . ."].)

At trial, there was testimony that when Loza handed Andrade the handgun, he said "[h]ere it is, it's broken." In his closing argument, the prosecutor recognized the apparent difficulty with this testimony. That is, the prosecutor acknowledged the possibility that perhaps some of the jurors could theorize that Loza handed the gun to Andrade with the intent to intimidate (rather the murder) the rival gang members: "Teach

10

those Famous Monkeys not to mess with us. Scare them off. That could be, right? That could be. Not likely, but it could be."

Recognizing the difficulty with the direct aider and abettor theory of liability, the prosecutor then clarified an alternative theory in which the jurors could find Loza guilty of murder: the natural and probable consequences theory. That is, the prosecutor explained that the target crimes in this case were disturbing the peace, simple assault, brandishing a weapon, or assault with a firearm. The prosecutor then said: "If you aid and abet somebody by backing them up, by being back in a target crime, if an ordinary person would think, hey, that could lead to murder, and it does, you're on the hook for murder." Because the prosecutor urged the jurors to consider and utilize the natural and probable consequence theory, we cannot find beyond a reasonable doubt that one or more of the jurors may have relied upon it.

Finally, the Attorney General argues that "it is *highly unlikely* the jury convicted" Loza based on the natural and probable consequences theory. (Italics added.) Perhaps that is true. But of course, that is not the correct legal standard. It is the Attorney General's burden to prove to us "beyond a reasonable doubt that the error did not contribute to the verdict." (*People v. Woods*, *supra*, 146 Cal.App.4th at p. 117.) The Attorney General has not overcome that burden.


B. *Substantive Gang Offense*

Loza argues that the trial court should have stayed his sentence for the substantive gang offense (rather than impose it concurrently). The Attorney General concedes the error. We agree.

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished

11

under more than one provision." (§ 654, subd. (a).) "Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) The argument is not forfeited on appeal by failing to raise the issue in the trial court. (See *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1312, fn. 2.)

Here, the jury convicted Loza of a substantive gang offense. (§ 186.22, subd. (a).) The trial court imposed a two-year concurrent sentence. The substantive gang crime arose from the same course of conduct as the murder. Thus, the two-year sentence must be stayed. (See § 654, subd. (a).)

## C. *Franklin Hearing*

Loza argues that he must be given the opportunity to present relevant mitigating evidence relating to his youthful offender status for his eventual use at a future youth offender parole hearing. We agree.

In 2013, the California Legislature changed both parole eligibility and parole considerations for youthful offenders. (§§ 3051, 4801, subd. (c).) The current version of section 3051, subdivision (a)(1), provides that: "A youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of his or her controlling offense." The hearing "shall provide for a meaningful opportunity to obtain release[,]" and "shall take into consideration the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (§ 3051, subds. (e) & (f)(1).)

In 2016, the California Supreme Court determined that the Legislature did not intend "that the original sentences of eligible youth offenders would be vacated."

12

(*Franklin*, *supra*, 63 Cal.4th at p. 278.) However, the Court determined that it was "not clear whether [the defendant] had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Id*. at p. 284.) As such, the Supreme Court remanded "for the limited purpose of determining whether [the defendant] was afforded an adequate opportunity to make" the appropriate record for use in a future youth offender parole hearing. (*Id*. at pp. 286-287.) This court recently held that habeas corpus is a proper method to seek a *Franklin* hearing. (*In re Cook* (2017) 7 Cal.App.5th 393.)

Here, the trial court sentenced Loza to a life prison term, triggering his right to a future youth offender parole hearing. Loza's sentencing took place well before *Franklin*, *supra*, 63 Cal.4th 261. Consequently, we direct the trial court to conduct a "*Franklin* hearing" on remand allowing both parties to put on the record any relevant evidence that demonstrates Loza's "culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Id*. at p. 284.)

III

DISPOSITION

Loza's petition for a writ of habeas corpus is granted. His conviction for first degree murder is vacated. If, after the filing of the remittitur, the prosecution does not retry Loza solely on the premeditation and deliberation element of murder—within the statutory time frame—the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of second degree murder and shall resentence Loza accordingly.

13

The court is also directed to modify the abstract of judgment concerning the substantive gang offense (to show that it has been stayed), and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The court shall also conduct a *Franklin* hearing as stated within this opinion.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.