Filed 1/4/22 P. v. Gregory CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B310573 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A632072) |
| v. | |
| VANTRAE GREGORY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Connie R. Quinones, Judge. Reversed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Vantrae Gregory challenges the trial court's summary denial of his petition under Penal Code[1] section 1170.95 for resentencing on his murder conviction. He contends that the trial court engaged in improper factfinding in determining that he was ineligible for relief because he was the actual killer. We agree and reverse.

**FACTUAL AND PROCEDURAL SUMMARY**

In 1985, a jury convicted Gregory of one count of first degree murder (§ 187, subd. (a)) and found that he personally used a firearm in the commission of the offense (former § 12022.5) and that that principal was armed in the commission of the offense (former § 12022, subd. (a)). The trial court sentenced him to 27 years to life in prison, and we affirmed the conviction on direct appeal. (See *People v. Gregory* (Dec. 5, 1986, B019217) [nonpub. opn.].)

In our opinion, we described the facts of the case as follows: "[O]n April 2, 1985, [Gregory] attended a birthday party where he engaged in an altercation with Teddy Johnson. [Gregory] suggested that he step outside with Johnson, whereupon [Gregory] produced a gun with a distinctive handle, but did not fire it. Johnson then departed, promising to return. When Johnson returned approximately two hours later, he 'shot up' the house where the party was taking place. [Gregory] then stated he was 'going to get [Johnson].'

"Pamela Hillman and Lionell Rose were also present at the April 2 birthday party. On April 11, at approximately 6[:00] p.m., [Gregory] and Rose told Hillman they were going to kill Johnson.

---

[1] Subsequent statutory references are to the Penal Code.

The two departed, then returned at approximately 8[:00] p.m., and told Hillman they had killed Johnson. The same evening, Hillman observed [Gregory] give the gun with the distinctive handle to Mike Smith. Ben Allen Hill, an acquaintance of Johnson's, received two gunshot wounds to the head between 7:30 and 8:00 p.m. on April 11 and died as a result of the wounds. Three or four days later, [Gregory] told Hillman he had killed the wrong person. When Rose, who was also present when [Gregory] made the statement, suggested they 'go back and get him,' [Gregory] said 'he would have to plan it out.'

"On April 17, 1985, Mike Smith and Paul Wallace were arrested driving a stolen truck and the gun with the distinctive handle was recovered by the police. It was later determined to be the murder weapon. Smith testified he recognized the gun as belonging to [Gregory]. Wallace asserted that [Gregory] subsequently stated Smith should 'take the rap for the gun' and should not mention [Gregory]'s name because the gun had been used in a murder. Jeffery Sanders testified that, while incarcerated in the Los Angeles County jail, he overheard a conversation between [Gregory] and Rose in which Rose accused [Gregory] of shooting the wrong person. [Gregory] did not respond to the accusation." (*People v. Gregory*, *supra*, B019217, at pp. 2–4.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with

3

the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) The legislation also enacted section 1170.95, which establishes a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Gregory filed a petition for resentencing under the new law on June 11, 2020. The District Attorney filed an opposition to the petition arguing that Gregory was ineligible for resentencing because he was convicted as the actual killer of the victim. Gregory's appointed counsel filed a letter brief "submit[ting] on the case record that [Gregory] has shown a prima facie case justifying issuance . . . of an [o]rder to [s]how [c]ause" but making no substantive argument. The court denied the petition on the ground that Gregory "was found to be the actual killer and" was not convicted "pursuant to the felony murder or natural and probable consequences doctrine."

## DISCUSSION

Gregory contends that the trial court erred by engaging in improper factfinding to deny his petition at the prima facie stage. We agree.

When a defendant files a facially sufficient petition for resentencing under section 1170.95, the trial court must first determine whether the petitioner has made a prima facie showing for relief. (§ 1170.95, subd. (c).) Our Supreme Court has explained that "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment

4

regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Drayton*, at p. 978, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456 . . . .) 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)

The court may consult the record of conviction at this stage, including any prior appellate opinions in the case, but "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' ([*People v. Woodell* (1998) 17 Cal.4th 448,] 457.) In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)[2]

---

[2] The Legislature recently enacted an amendment to section 1170.95, which took effect January 1, 2022, and which explicitly restricted the use of prior appellate opinions at this stage. Under the new version of the law, at the final stage of proceedings, "[t]he court may . . . consider the procedural history

Gregory contends that, under this standard, he made a prima facie case for resentencing, and the trial court erred by finding to the contrary. We agree. Although the record of conviction, including the original appellate opinion in the case, suggests strongly that Gregory was the actual killer, neither we nor the trial court may engage in factfinding at this stage. (See *Lewis*, *supra*, 11 Cal.5th at p. 972.) The jury was instructed as to the natural and probable consequences doctrine, and although the prosecutor at trial apparently did not argue the doctrine to the jury, we cannot say as a matter of law that the jury did not rely on it in convicting Gregory. Gregory has surpassed the " 'very low' " bar to make a prima facie case. (*Ibid.*)

The Attorney General concedes that, prior to the Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), it was possible for a jury to convict a defendant of first degree murder under the natural and probable consequences doctrine, but contends that the jury instructions in this case did not allow for such a conviction. The only instructions on first degree murder in this case were under the heading, "deliberate and premeditated murder." This instruction informed the jury, "[i]f you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." The Attorney General argues that the jury must have relied on this instruction,

---

of the case recited in any prior appellate opinion," but is bound by the Evidence Code's rules regarding the admission of evidence. (Sen. Bill No. 775 (2021–2022 Reg. Sess.) § 2.)

not the natural and probable consequences doctrine, to convict Gregory of first-degree murder.

This argument overlooks other aspects of the instructions. The jury was informed about the natural and probable consequences doctrine as follows: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged." The instruction on deliberate and premeditated murder stated that "[a]ll murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree." It also told the jury that, "[t]o constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill." (Italics added.) We cannot rule out the possibility that the jury relied on these instructions together and found Gregory guilty of first degree murder under the natural and probable consequences doctrine.

The Attorney General contends that the court's opinion in *People v. Stevenson* (2018) 25 Cal.App.5th 974 shows that the jury could not have relied on the natural and probable consequences doctrine to convict Gregory. In *Stevenson*, three defendants were tried jointly for murder. As in this case, the jury received instructions on both first degree murder and the natural probable consequences doctrine. Nevertheless, the court held that the jury could not have relied on the natural and probable consequences doctrine to convict the defendant of first degree

7

murder.[3]  (See *id.* at pp. 981–984.)  But the jury instructions in *Stevenson* were more limited than those Gregory's jury received. The instructions told the jury that " '[a] defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  A defendant acted *willfully* if he intended to kill.  A defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  A defendant acted with *premeditation* if he decided to kill before completing the acts that caused death.  [¶] . . . [¶]  The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder.' " (*Id.* at pp. 981–982.)  There was no instruction indicating that the jury could convict the defendant of first degree murder if the *slayer* acted with premeditation. Indeed, the court in *Stevenson* relied on the lack of such an instruction to distinguish the case from *Chiu.*  (See *Stevenson, supra*, at pp. 983–984.)

The Attorney General cites two more parts of the record to argue that the trial court correctly denied the petition.  First, the facts recited in the opinion in Gregory's direct appeal describe

---

[3] *Stevenson* was decided after the Supreme Court disallowed first degree murder convictions under the natural and probable consequences in *Chiu*, but before the Legislature enacted Senate Bill No. 1437.  Thus, at the time of the opinion, a defendant could be found guilty of second degree murder, but not first degree, under the natural and probable consequences doctrine.

8

him as the actual killer, particularly his statement to Hillman that he killed the wrong person. Second, the Attorney General notes that the jury found true an enhancement under former section 12022.5 indicating that Gregory personally used a firearm in the commission of the crime.[4] But the facts in the original opinion are a summary of the trial evidence described in the light most favorable to the verdict. The firearm enhancement required the jury to find that Gregory personally used a firearm in the commission of the crime, not that he killed the victim. (See *People v. Jones* (2003) 30 Cal.4th 1084, 1120 [finding the defendant personally used a firearm does "not in itself prove defendant was the actual killer"]; see also *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1494 [enhancement under section 12022.5 for personal "use of a firearm in the commission of a crime does not encompass any specific intent"].) To deny the petition on the basis of these points would require us to engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " (*Lewis*, *supra*, 11 Cal.5th at p. 972), albeit at an

---

[4] At the time of Gregory's trial, section 12022.5 provided that "[a]ny person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for two years, unless use of a firearm is an element of the offense of which he or she was convicted." (Stats. 1982, ch. 1404, § 2.1, pp. 5358–5359.) The Legislature has subsequently repealed the statute and replaced it with a new section 12022.5 that also provides for a sentence enhancement for defendants who use a firearm in the commission of a felony. (See Stats. 2010, ch. 711, § 5, p. 4039.)

elementary level. The Supreme Court in *Lewis* has forbidden us from doing so.

Nor may we affirm the trial court's decision as harmless error. In *Lewis*, the Supreme Court held that, in order to demonstrate prejudice, a petitioner need not show that he is likely to succeed in the end; instead, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [not for the error] his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 974.) Gregory, in making a prima facie case, has met a " 'bar [that] was intentionally . . . set very low.' " (*Id.* at p. 972.) It is enough to require us to reverse the trial court's order.[5]

---

[5] In reaching this conclusion, we do not mean to imply that the trial court's decision was an unreasonable interpretation of the case law in existence at the time of the hearing, which predated the Supreme Court's decision in *Lewis*. More than one Court of Appeal opinion had held that trial courts could properly rely on prior appellate opinions, without apparent limitation, as a basis for finding that a defendant failed to make a prima facie case for relief. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, review granted, Mar. 18, 2020, S260493.)

## DISPOSITION

The trial court's order denying the petition for resentencing is reversed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

CRANDALL, J.*

---

**\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11