Filed 9/18/20  P. v. Johnson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFRED JOHNSON,<br><br>    Defendant and Appellant. | H047033<br>(Monterey County<br>Super. Ct. No. MCR4898) |

A jury found defendant Alfred Johnson guilty of second degree murder in 1983.  Johnson appeals from a November 2019 order denying his petition to vacate the conviction and be resentenced under Penal Code section 1170.95.[1]  For the reasons explained below, we conclude that Johnson stated a prima facie case of entitlement to relief.  We will therefore reverse the superior court's order denying Johnson's section 1170.95 petition for failure to make a prima face case for relief and remand the matter for the issuance of an order to show cause and an evidentiary hearing on the petition.

## I.  FACTS AND PROCEDURAL BACKGROUND

We take the facts underlying Johnson's conviction verbatim from the judicial opinion in his direct appeal.  (*People v. McCormick et al.* (May 16, 1985, A025530) [nonpub. opn.] (*Johnson I*).[2])

---

[1] Unspecified statutory references are to the Penal Code.

[2] We reject Johnson's contention that the trial court erred in taking judicial notice of this opinion.  A court may generally take notice of the existence of another court's findings of fact and conclusions of law in support of a judgment.  (Evid. Code, §§ 452, subds. (a), (d), 459; *People v. Tolbert* (1986) 176 Cal.App.3d 685, 690; *People v. Perkins* (2016) 244 Cal.App.4th 129, 134, fn. 3 [taking judicial notice of facts from the record in the prior appeal challenging defendant's conviction].)  We also may rely on the facts stated in *Johnson I*.  (Evid. Code, § 459, subd. (a); *In re Loza* (2018) 27 Cal.App.5th 797, 799, fn. 1.)  On our own motion, we take judicial notice of the docket from A025530.  (Evid. Code, § 459.)  Although this document was not before the trial court, the parties do not object to our taking judicial notice of it, and we exercise our discretion to consider it.  (Evid. Code, §§ 452, subds. (a), (d), 459, subd. (a); *McMahan v. City and County of San Francisco*

"On the night of August 7, 1983, the victims, Alvin Brooks and Steven 'Goodie' Edwards, went to appellant Johnson's place of employment, the Seasider Club. Edwards and Johnson engaged in verbal combat which escalated until Johnson attempted to hit Edwards, but fell to the ground. Ultimately police were called and subdued Johnson. [¶] Two nights later Brooks and Edwards went for a ride in Brooks'[s] car, with another friend, Ronald 'Kiki' Wilkins, in the back seat. They parked in the Seasider parking lot. Soon after their arrival Johnson and McCormick arrived in the former's car. Johnson walked to within five or ten feet of Brooks'[s] car and told Edwards to get out; he refused. McCormick walked over to the driver's side, produced a gun, and held it to Brooks'[s] temple. Johnson said to Brooks, 'You'll die, too.' Edwards turned towards Johnson, who began hitting him. McCormick ordered Brooks to take the keys out of the ignition and put his hands out the driver's window; Brooks complied. [¶] As Johnson continued to swing at Edwards, McCormick moved the gun away from Brooks'[s] head and fired a shot right behind the neck. Edwards slumped in the seat. He died as a result of the bullet lacerating his aorta. [¶] Both defendants testified. McCormick stated that just before the shooting Edwards had threatened to 'blow both of you . . . away,' and that he shot because Edwards was going for something under the seat. Johnson testified that when he approached the car Edwards poked at him with a knife, which Johnson took away. [¶] No weapons were found in a thorough police search of the Brooks vehicle. Neither did police find the knife that Johnson allegedly took from Edwards and placed in his duffle bag at McCormick's house." (*Johnson I*, at pp. 2–3.)

In 1983, Johnson and McCormick were charged by amended information (information). Count 1 of the information charged both defendants with murder (§ 187) and alleged that on or about August 9, 1983, McCormick and Johnson "did willfully, unlawfully, and with malice aforethought murder Steven Edwards, a human being." In connection with count 1, the information also alleged "in the commission and attempted commission of the above offense a principal in said offense was armed with a firearm, to wit, gun, said arming not being an element of the above offense, within the meaning

(2005) 127 Cal.App.4th 1368, 1373, fn. 2.) The docket indicates that Johnson did not file a petition for rehearing in *Johnson I*. We note that the California Supreme Court generally relies on the statement of facts in a prior appellate opinion where no petition for rehearing was filed. (*People v. Vidana* (2016) 1 Cal.5th 632, 635, fn. 2.)

of Penal Code section 12022(a). [¶] It is further alleged that in the commission of the above offense the said defendant, [McCormick] personally used a firearm, to wit, gun, within the meaning of Penal Code Section 12022.5" (some capitalization omitted).

The information also charged both defendants with assault with a deadly weapon, a gun, by means of force likely to produce great bodily injury upon Alvin Delbert Brooks (§ 245; count 2) and alleged that McCormick personally used a firearm in the commission of the offense (§ 12022.5). Count 3 charged Johnson with "harbor[ing], conceal[ing], and aid[ing] [McCormick] with the intent that he might avoid and escape from arrest, trial, conviction, and punishment" for murder (§ 32). The information alleged that Johnson had been previously convicted of assault with intent to commit rape and burglary and had served a prison term for the offense. (§ 667.5, subd. (b).)

On November 10, 1983, Johnson was convicted by a jury of murder in the second degree (§ 187) on count 1. For count 1, the jury was given the option of, but did not return verdicts for the alternate crimes of first degree murder (§ 187), voluntary manslaughter (§ 192), and involuntary manslaughter (§ 192). In connection with count 1, the jury also found that Johnson was not armed with a firearm in the commission of the offense. For count 2, the jury found Johnson guilty of assault with a deadly weapon upon Alvin Brooks (§ 245). The jury found Johnson not guilty of count 3 (§ 32).

On December 12, 1983, Johnson filed a motion for a new trial.[3] Among other contentions, Johnson asserted that the jury had been incorrectly instructed on aiding and abetting murder. He stated, "[t]he aiding and abetting instructions given to the jury in conjunction with the crime of murder (Cal Jic [*sic*] 3.00 and 3.01) failed to tell the jury that an aider and abettor must share the same criminal intent of the perpetrator." Johnson argued that the facts did not show he actively participated in the murder.

---

[3] On its own motion, this court obtained a copy of the trial court file from Johnson's original conviction. This court provided a copy of the trial court file to the parties with an opportunity for them to review it and indicate whether they objected to this court taking judicial notice of any document contained therein. Neither party objected to this court taking judicial notice of any of the documents. This court takes judicial notice of Johnson's motion for new trial, and the trial court's minute order denying the motion. (Evid. Code, §§ 452, subds. (a), (d), 459, subd. (a).)

On December 14, 1983, the trial court denied Johnson's motion for new trial and sentenced him to 15 years to life on count 1 plus a one-year consecutive term for the section 667.5, subdivision (b) enhancement and concurrent terms of four years on count 2 and one year on the section 667.5, subdivision (b) enhancement.

Johnson and McCormick appealed their convictions. Johnson argued the trial court erred in admitting evidence of his two prior convictions to impeach him; the trial court erred in ruling certain post-crime evidence inadmissible; and the evidence against him was insufficient—in particular there was insufficient evidence "to support a jury finding that he harbored the requisite intent" for the two crimes of which he was convicted. (*Johnson I*, *supra*, at pp. 3–5.) There is no indication in the opinion that Johnson challenged on appeal any of the instructions given to the jury related to murder or aiding and abetting liability.[4]

The appellate court rejected all of Johnson's arguments. With respect to the sufficiency of the evidence challenge, the court stated, "Because appellant McCormick held the weapon during both the killing of Edwards and the assault on Brooks, appellant Johnson was necessarily convicted on an aiding and abetting which, as he suggests, required the jury to find that he had knowledge of McCormick's purpose and the intent to facilitate its commission. [Citation.] Our review of the evidence reveals ample evidence to support these findings. . . . Johnson's behavior during and after the fatal encounter provided support for the finding of intent. (For example, Johnson said to Brooks, 'You'll die, too.' and after the shooting he told bystanders to not call an ambulance [].)" (*Johnson I*, *supra*, at p. 6.)

In March 2019, Johnson filed on his own behalf a petition for resentencing pursuant to section 1170.95 (petition). In the petition, Johnson filed a declaration in which he checked a number of pre-printed boxes that indicated he was eligible for resentencing pursuant to section 1170.95, subdivision (d)(2). Johnson asserted that at trial he was "convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine." However, Johnson did not check the box next to the statement that he "was convicted of 2nd degree murder under the natural and

---

[4] Johnson did challenge the trial court's instruction to the jury that evidence relating to a shooting at McCormick's house that occurred after the killing was irrelevant to the jury's consideration of Johnson's guilt or innocence. (*Johnson I*, *supra*, at pp. 5–6.)

4

probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019." The trial court appointed counsel for Johnson.

On April 23, 2019, the Monterey County District Attorney's Office (district attorney) filed an opposition to Johnson's petition. The district attorney acknowledged that Johnson had been charged with " 'willfully, unlawfully, and with malice aforethought murder[ing] Steven Edwards,' " and this language did not exclude the possibility that Johnson could be convicted of murder on a felony murder theory. The district attorney also agreed with Johnson that he had been convicted of second degree murder. However, the district attorney argued Johnson was not eligible for relief under section 1170.95 because "[a]s the appellate opinion in this case makes clear, [Johnson] was convicted as an aider and abettor, having an intent to kill." The district attorney quoted the following language from the appellate opinion: " 'Because [] McCormick held the weapon during the killing of Edwards and the assault on Brooks, [petitioner] Johnson was necessarily convicted on an aiding and abetting theory, which, as he suggests, required the jury to find that he had knowledge of McCormick's purpose and the intent to facilitate its commission. [Citation.] Our review of the record reveals ample evidence to support these findings.' "

In its opposition to Johnson's petition, the district attorney stated "The law of aiding and abetting was not changed by SB 1437. Under the current state of the law, petitioner is guilty of murder for aiding and abetting McCormick in committing this murder, with an intent to kill. The jury would be given the same instructions today as they were during petitioner's original trial. Petitioner has not met his burden of showing that he could not be convicted following the changes to Penal Code sections 188 and 189, effective January 1, 2019."

On May 31, 2019, Johnson, represented by counsel, filed a response to the district attorney's opposition to his petition for resentencing. Johnson recounted the facts of the offense, as contained in the probation report. Johnson asserted the appellate court's statement that Johnson "was necessarily convicted on an aiding and abetting theory," is—in Johnson's view—"problematic, since the Jury did not find that this was first degree murder that was premeditated and deliberate, but a second degree murder. Therefore, Mr. Johnson did not plan the murder with McCormick and, as all the evidence

5

showed, McCormick shot the victim through a car in which Mr. Johnson was on the other side of the car." Johnson stated the record is not clear whether Johnson knew McCormick had a gun.

Johnson asserted he was convicted by the jury on a theory of natural and probable consequences, rather than aiding and abetting. Johnson stated "it is clear that Mr. Johnson wanted to confront Mr. Edwards and potentially fight him for the slight two days earlier. Nonetheless, it is equally clear that the jury did not believe he planned to murder Edwards and that it was a, more or less, spontaneous act of McCormick as he was confronting Brooks. This is a natural and probable consequences murder conviction as Mr. Johnson merely was there to confront, PC 415(1) and 242, with Edwards and unbeknownst to him his codefendant was armed and shot Edwards during the confrontation." Johnson argued he had made a prima face showing of entitlement to relief, and he requested the trial court issue an order to show cause and set the matter for a hearing.

Neither Johnson nor the district attorney provided the trial court with the jury instructions that had been given to Johnson's jury.

On June 13, 2019, the trial court held a hearing on Johnson's petition and denied it. In its oral ruling the trial court indicated that it had read the decision of the Court of Appeal, including the statement that Johnson had been convicted on an aiding and abetting theory. The trial court stated, "I think I am required to follow those findings since it's already been—those findings have been made by the Appellate Court." The trial court added, "even if there was no Appellate Court that had stated those things, I would still find that in this case Mr. Johnson could still be prosecuted under even the new homicide laws based on a traditional aiding and abetting theory, and that he did appear to share an intent to kill; but also as stated by the Appellate Court, he certainly was a major participant who acted with reckless indifference to human life if we're analyzing it under that standard." The trial court did not issue an order to show cause and found Johnson ineligible for relief under section 1170.95.

Johnson appeals the trial court's summary denial of his petition.

## II. DISCUSSION

Johnson argues that the trial court erred when it denied his petition because it improperly relied on the facts as stated in *Johnson I*, and a court may not take judicial notice of facts stated in prior judicial opinions. Alternatively, Johnson argues that, even if the trial court properly relied on the facts

6

as stated in *Johnson I*, the opinion in that case does not establish beyond a reasonable doubt that Johnson was convicted as a direct aider and abettor of second degree murder, instead of on an alternative theory of liability, such as natural and probable consequences or felony murder. Johnson argues that the trial court's conclusion that Johnson had been convicted of murder as a "direct aider and abettor" or, alternatively, that he was a major participant in the felony who acted with reckless indifference to human life, involved the weighing of facts and therefore was inappropriate for summary disposition. Johnson requests that this court either reverse the judgment and remand with instructions to issue an order to show cause or order the trial court to grant the petition and resentence him.

The Attorney General maintains that the appellate decision in *Johnson I* "is a fact within the record of conviction" that shows that Johnson does not fall within section 1170.95 as a matter of law. Therefore, the trial court did not err in summarily denying the petition under 1170.95, subdivision (c). The Attorney General asserts that the appellate opinion necessarily establishes that Johnson was convicted as an aider and abettor of second degree murder, because it discussed the evidence that established Johnson's intents for each of the two crimes of which he was convicted. Had Johnson been convicted on a natural and probable consequences theory or of felony murder, then the appellate court would have had to discuss the connection between the felony (i.e., the assault on Brooks) and the murder of Edwards.

A. *Senate Bill No. 1437 and Section 1170.95*

"Senate Bill 1437, which took effect on January 1, 2019, 'addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine[.]' [Citation.] Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. [Citations.] 'This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed " 'for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion.' [Citations.]" [Citation.]' [Citation.] Aider and abettor liability under the natural and probable

7

consequences doctrine was thus 'vicarious in nature.' " (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749 (*Munoz*), review granted on other grounds Nov. 26, 2019, S258234.)

Senate Bill No. 1437 revised sections 188 and 189 such that murder liability may not now be imposed "on a person who did not act with implied or express malice, was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Munoz*, *supra*, 39 Cal.App.5th. at pp. 749–750, fn. omitted, review granted.)

Senate Bill No. 1437 also added section 1170.95, which states that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when [specified] conditions apply." (§ 1170.95, subd. (a); see also § 1170.95, subd. (d)(3) [addressing resentencing "on the remaining charges"; § 1170.95, subd. (e) [addressing resentencing when "murder was charged generically[] and the target offense was not charged," by "redesignat[ing]" the murder conviction "as the target offense or underlying felony"].)

"To file the petition, all three of the following conditions must be met:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶] (2) The petitioner was convicted of first or second degree murder following a trial . . . .  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189.' " (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410.)  The petition must include, among other things, a declaration stating that the petitioner "is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1170.95, subd. (b)(1)(A).)

Section 1170.95, subdivision (c) (hereafter section 1170.95(c)), "contemplates a more substantive review by the trial court . . . .  Section 1170.95(c) provides '[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file

8

and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 974–975 (*Drayton*).)

"By its text, section 1170.95(c) thus requires the trial court to make two assessments. The first is whether the petitioner has made a prima facie showing of eligibility for relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95[, subdivision] (a)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 975, italics omitted.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329 (*Verdugo*), review granted Mar. 18, 2020, S260493.) "If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the 'second' inquiry into the prima facie showing under section 1170.95(c). [Citation.] In this second step, the trial [court] considers whether the petitioner has made a prima facie showing of entitlement to (rather than eligibility for) relief." (*Drayton*, at p. 976, italics omitted.)

When assessing whether the petitioner has made a prima facie showing of entitlement to relief, "the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th, at p. 980.)

"If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a), then the trial court should issue an order to show cause. (§ 1170.95(c).) Once the trial court issues the order to show cause under section 1170.95(c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subdivision (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. (§ 1170.95, subd. (d)(2).) Notably, following the issuance of an order to show cause, the burden of proof will shift to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)" (*Drayton*, *supra*, 47 Cal.App.5th at pp. 980–981.)

B. *Standard of Review*

Johnson notes that the standard for appellate court review of a trial court's order denying a section 1170.95 petition is unsettled. He analogizes the trial court order to the denial of a section 1181.1 motion for acquittal. Citing *People v. Stevens* (2007) 41 Cal.4th 182, he asserts the trial court's order denying a section 1170.95 petition is a question of law subject to de novo review. The Attorney General agrees that this court should review the trial court's order de novo on the basis that this appeal involves the construction and interpretation of a statute. We agree that this appeal turns on the interpretation of section 1170.95 and therefore is a question of law we review de novo. (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.)

C. *Analysis*

As described above, the trial court denied Johnson's petition for two independent reasons. The trial court concluded it was required to "follow [the] findings" of the appellate court that there was sufficient evidence that Johnson aided and abetted McCormick. Alternatively, the trial court stated that "even if there was no [a]ppellate [c]ourt that had stated those things," it would still find Johnson ineligible for relief because he could "still be prosecuted under the new homicide laws based on a traditional aiding and abetting theory, and that he did appear to share an intent to kill," and he "certainly was a major participant who acted with reckless indifference to human life if we're analyzing it under that standard."

Taking the latter justification first, the trial court erred when it determined—without first issuing an order to show cause and conducting an evidentiary hearing—that Johnson had the requisite intent as a direct aider and abettor or was a major participant who acted with reckless indifference to human life. At the prima facie review stage under section 1170.95(c), the trial court's authority to make determinations contrary to petitioner's factual assertions "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th, at p. 980.) Absent such "readily ascertainable facts," the trial court must issue an order to show cause and conduct an evidentiary hearing pursuant to section 1170.95, subdivision (d), at which the prosecution will bear the burden of proof.

Here, the trial court's determination based on its own assessment of the facts that Johnson had the requisite intent of a direct aider and abettor or was a major participant who acted with reckless indifference ran counter to Johnson's assertions that he was eligible for relief. Such a conclusion required the court to weigh evidence and thus was beyond its authority at the prima facie assessment stage. (*Drayton*, *supra*, 47 Cal.App.5th, at p. 980; § 1170.95(c).)

We now turn to the trial court's alternative basis for denying relief—that it was bound by the appellate decision in the direct appeal. As a preliminary matter, the parties dispute whether a trial court may rely on the appellate opinion from a petitioner's prior appeal when assessing whether a petitioner has made a prima facie showing under section 1170.95(c). Johnson argues "in this particular case where the records are mostly destroyed and where the issue on appeal was sufficiency of the evidence, it was error for the trial court to rely upon the appellate opinion in denying appellant's section 1170.95 petition."

Relying on *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137 (*Lewis*), review granted Mar. 18, 2020, S260598, the Attorney General argues that the trial court properly considered the record of Johnson's conviction, including *Johnson I*, in evaluating the sufficiency of his petition. The Attorney General contends that "it would be unreasonable and a waste of judicial resources to require a superior court to appoint counsel and review briefing when it is aware that the trier of fact made findings which

11

clearly preclude eligibility for relief." The Attorney General maintains that a contrary holding would "permit the litigation of facially frivolous petitions," and statutes should not be interpreted to lead to absurd results. Citing the court's language from *Johnson I*, the Attorney General maintains the trial court properly denied Johnson's petition without conducting an evidentiary hearing because "the record of conviction indisputably showed that appellant's murder conviction was based on principles of direct aiding and abetting which require proof of an intent to kill rather than a natural and probable consequences theory." Therefore, Johnson is ineligible for relief as a matter of law.

We agree with the conclusion of other Courts of Appeal that the trial court may rely upon an appellate opinion as part of the record of conviction in assessing a petitioner's prima facie entitlement to relief. (*People v. Lee* (2020) 49 Cal.App.5th 254, 262; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1138, review granted; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, 333, review granted; *Cornelius*, *supra*, 44 Cal.App.5th at pp. 57–58, review granted.) However, we caution that the trial court must proceed carefully when so doing. The reviewing court may have been answering a different question in the direct appeal than that posed by the section 1170.95 petition, in which case its legal conclusions may have limited relevance. Johnson's case provides an example of this concern. In *Johnson I*, the Court of Appeal addressed Johnson's challenge to the evidence underlying his conviction. Johnson apparently did not renew the challenge to the jury instructions on aiding and abetting that he had made in his motion for new trial, and therefore the Court of Appeal did not have occasion to directly analyze the jury instructions given at his trial related to his liability for murder. Indeed, the opinion from the direct appeal does not clarify the precise theory of liability upon which he was convicted.

As Johnson notes, the opinion from his direct appeal "does not state that the theory of liability was direct[ly] aiding and abetting, as opposed to aiding and abetting a different crime, the natural and probable consequences of which were murder."(Italics omitted.) Johnson notes that the decision does not identify Johnson's "target crime" as murder, and the court could have meant that the crime he intentionally aided and abetted was assault or battery. Johnson points out that there were no other special findings by the jury that clarify whether the jury believed Johnson aided and abetted McCormick's murder of Edwards, or aided McCormick to commit some other crime. Further,

12

Johnson notes that the jury did not convict either McCormick or Johnson of first degree murder, even though they were provided that option on the verdict form. Instead, the jury convicted the two men of second degree murder. Johnson points to a number of facts that, he argues, make it improbable that he and McCormick intended to kill Edwards.[5] Johnson contends he only had the intent to assault Edwards, not to murder him.

It was uncontested that Johnson was not the actual killer of Edwards, and therefore Johnson must have been convicted on a theory other than that he was the actual killer. But the appellate opinion is far from precise about the theory of liability upon which Johnson was actually convicted of second degree murder. The appellate court was understandably focused on whether there was sufficient evidence of Johnson's mental state, because that was the question Johnson asked it to decide. (See *Johnson I*, at p. 1.) In so doing, the Court of Appeal did not identify whether it found there was sufficient evidence that Johnson intended to aid and abet McCormick in the crime of second degree murder, or in some other crime (either against Edwards himself or the other victim, Brooks), the natural and probable consequence of which was Edwards's death.

As described above, the relevant sentences in the appellate opinion read "Because appellant McCormick held the weapon during both the killing of Edwards and the assault on Brooks, appellant Johnson was necessarily convicted on an aiding and abetting theory, which, as he suggests, required the jury to find that he had knowledge of McCormick's purpose and the intent to facilitate its commission. (People v. Beeman (1984) 35 Cal.3d 547, 561.)" (*Johnson I*, at p. 6.) In a footnote to the citation to *Beeman,* the court noted "the trial court correctly anticipated the Beeman holding and gave the jury the appropriate instruction on this point." (*Johnson I*, at p. 6, fn. 4.) But the court did not identify the crime that Johnson necessarily aided. Although Johnson's jury could have been instructed that Johnson was a direct aider and abettor to McCormick of murder, it could also—at least in theory—have convicted Johnson as an aider and abettor to McCormick of a different crime, the natural and probable consequence of which was murder.

---

[5] Johnson does not address whether he could have been convicted as an aider and abettor to second degree murder under a theory of implied malice. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056–1057 (*Soto*).)

The law on aiding and abetting in California is complex, and there are several theories of liability upon which Johnson could have been convicted of murder. In *People v. Prettyman* (1996) 14 Cal.4th 248 (*Prettyman*), the California Supreme Court summarized California law with respect to direct aiding and abetting liability and the natural and probable consequences doctrine. "Under California law, a person who aids and abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of the actual perpetrator. (§ 31.) [¶] Accomplice liability is 'derivative,' that is, it results from an act by the perpetrator to which the accomplice contributed." (*Id.* at p. 259.) "In *People v. Beeman* (1984) 35 Cal.3d 547, we discussed the mental state necessary for liability as an aider and abettor. To prove that a defendant is an accomplice, we said, the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' [Citation.] Thus, we held, an aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*Ibid.*)

The court in *Prettyman* also described liability under the natural and probable consequences theory. "It sometimes happens that an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense). Whether the accomplice may be held responsible for that nontarget offense turns not only upon a consideration of the general principles of accomplice liability set forth in *People v. Beeman*, *supra*, 35 Cal.3d 547, but also upon a consideration of the 'natural and probable consequences' doctrine." (*Prettyman*, *supra*, 14 Cal.4th at pp. 259–260.) Under that doctrine, "a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*Id.* at p. 261.)

The California Supreme Court concluded, "As we pointed out earlier, under the general principles of aiding and abetting, 'an aider and abettor [must] act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] Therefore, when a particular aiding and abetting case triggers application of the 'natural and probable consequences' doctrine, the *Beeman* test applies, and the trier of fact must find that the defendant, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) by act or advice aided, promoted, encouraged or instigated the commission of the target crime. But the trier of fact must also find that (4) the defendant's confederate committed an offense other than the target crime; and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted." (*Prettyman*, *supra*, 14 Cal.4th at p. 262, fn. & italics omitted.)

The California Supreme Court made clear in *Prettyman* that the *Beeman* principles apply both to direct aiders and abettors (that is, those who intend to aid the actual killer in murder) as well as to those aiders and abettors convicted on a natural and probable consequences theory. The reference in *Johnson I*, therefore, to *Beeman* in the footnote discussing Johnson's murder conviction does not resolve whether he was convicted of murder as a direct aider and abettor or on a natural and probable consequences theory.

Although prior to the amendments made by Senate Bill No. 1437 both forms of liability could result in a conviction of murder, the difference between them has great importance in the section 1170.95 context. As this court has recently observed, "This distinction between direct aiding and abetting liability and natural and probable consequences doctrine is critical because potential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequence doctrine or of felony murder." (*Soto*, *supra*, 51 Cal.App.5th at p. 1056.)

Johnson challenges the trial court's conclusion in its summary denial of his section 1170.95 petition that he was necessarily convicted of second degree murder as a direct aider and abettor. Johnson emphasizes that neither he nor McCormick was convicted of first degree murder, and therefore the jury rejected the conclusion that this was an intentional, premeditated killing. In

15

addition, the facts surrounding the killing here fit into the paradigmatic example of a natural and probable consequences scenario. As the California Supreme Court observed in *Prettyman*, decisions involving the natural and probable consequences doctrine "most commonly involved situations in which a defendant assisted or encouraged a confederate to commit an assault with a deadly weapon or with potentially deadly force, and the confederate not only assaulted but also murdered the victim." (*Prettyman*, *supra*, 14 Cal.4th at p. 262.) Johnson's involvement in Edwards's killing permits—rather than precludes—application of forms of liability other than direct aiding and abetting.

Against this legal and factual background, we reject the Attorney General's contention that the opinion in *Johnson I*, "indisputably show[s] that Johnson's murder conviction was based on principles of direct aiding and abetting which require proof of an intent to kill rather than a natural and probable consequences theory." When the trial court considered Johnson's prima facie entitlement to relief under section 1170.95(c), it had before it only the information, the jury verdict, the probation report, the abstract of judgment, and the opinion in *Johnson I*. As none of these materials explicitly stated the theory of liability on which Johnson was convicted of second degree murder, we decide that the trial court did not have before it "readily ascertainable facts" sufficient to establish as a matter of law that Johnson's assertion in the petition that he was convicted of murder on a natural and probable consequences theory or of felony murder was untrue. (See *Drayton, supra*, 47 Cal.App.5th at p. 980.) Therefore, the trial court should have issued an order to show cause and conducted a hearing pursuant to section 1170.95, subdivision (d).

Accordingly, we will reverse the superior court's order determining that defendant failed to establish a prima facie case of entitlement to relief under section 1170.95. We remand the matter for the issuance of an order to show cause and a hearing on Johnson's section 1170.95 petition. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 982–983; § 1170.95, subds. (c), (d).) We express no opinion regarding Johnson's entitlement to relief following the hearing.

16

## III. DISPOSITION

The superior court's order denying Johnson's Penal Code section 1170.95 petition for failure to state a prima facie case is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing on the petition (Pen. Code, § 1170.95, subd. (d)).

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047033**
*People v. Johnson*

17