Filed 1/27/21  P. v. Nava CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303587 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA036614) |
| v. | |
| FABIAN NAVA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Martin L. Herscovitz, Judge.  Reversed and remanded.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

A jury convicted Fabian Nava of murdering a rival gang member in 1999. Nava subsequently petitioned the court for resentencing pursuant to Penal Code section 1170.95, on the basis that he was convicted as an aider and abettor under a natural and probable consequences theory. After issuing an order to show cause and holding a hearing, the trial court denied the petition. Nava contends the order must be reversed because (1) the trial court erroneously concluded the jury convicted him as a direct aider and abettor and (2) the trial court applied the wrong legal standard to deny his petition. We reverse and remand the case for the court to conduct a new hearing.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Nava was charged with the first degree murder of Carlos Mora in a gang-related shooting in 1999. At trial, the prosecution presented evidence showing Mora died after being attacked twice by members of a rival gang to which Nava belonged. During the first attack, several members of the gang severely beat Mora and someone fired a gun at him. Two witnesses identified Nava as a participant in the assault. Following the initial attack, Mora tried to escape but was chased down by a car and shot repeatedly by one of its occupants. Circumstantial evidence showed the same people were responsible for both attacks.

In closing, the prosecutor briefly argued the evidence established that Nava was in the car that chased down Mora, and that he directly aided and abetted the shooter. The prosecutor's primary theory, however, was that Nava was guilty of murder under the doctrine of natural and probable consequences based

---

[1] We take some of the facts from the prior nonpublished opinion in this case, *People v. Nava* (July 17, 2002, B151094) [nonpub. opn.].

on the evidence showing he participated in the initial assault. Consistent with this theory, the trial court instructed the jury as follows: "One who aids and abets [another] in the commission of a crime is not only guilty of [that crime] . . . , but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[] originally aided and abetted."

The court further instructed the jury with CALJIC No. 8.20, which defined first degree murder as follows: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree. . . . [¶] . . . If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation . . . , it is murder of the first degree. . . . [¶] . . . To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill."

The jury convicted Nava of first degree murder. It did not find true the allegation that Nava personally used a firearm (Pen. Code, § 12022.5),[2] but did find the offense was committed on behalf of a criminal street gang (§ 186.22, subd. (b)(1)) and that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (d) & (e)(1)). This court affirmed the conviction (*People v. Nava* (July 17, 2002, B151094) [nonpub. opn.]).

In August 2018, Nava filed a petition for writ of habeas corpus asserting he was unlawfully convicted of first degree

---

[2]    All further undesignated statutory references are to the Penal Code.

murder. Nava apparently argued his conviction was premised on the natural and probable consequences doctrine, which *People v. Chiu* (2014) 59 Cal.4th 155 held cannot be the basis for a first degree murder conviction. The prosecution conceded it could not prove beyond a reasonable doubt that the jury relied on a legally valid theory to convict Nava of first degree murder. The trial court granted the petition and reduced Nava's conviction to second degree murder.

While Nava's habeas petition was pending, he separately filed a petition for recall of sentence pursuant to section 1170.95. Among other things, Nava suggested he was entitled to relief because he was convicted under the natural and probable consequences doctrine, which Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437) had abolished as a basis for a murder conviction.

After reviewing the petition, the trial court found Nava set forth a prima facie basis for relief, appointed counsel to represent him, and issued an order to show cause why relief should not be granted.

The prosecution filed a response to the petition and opposition to the order to show cause, urging the court to deny Nava's petition. In support of its arguments, the prosecution submitted exhibits from the underlying trial, the jury instructions, excerpts of the reporter's transcripts, and the appellate opinion. Nava filed a reply brief in support of his petition. Before the hearing on the order to show cause, the parties stipulated to proceed based on the paperwork that had already been submitted.

At the hearing, the prosecutor argued the court should deny the petition because it was clear, based on the instructions

4

given at trial, the jury either found Nava acted with actual malice, or alternatively there was sufficient evidence from which it could have made that finding.  Nava, in response, stressed that the prosecution in the underlying trial advanced the natural and probable consequences theory because it was unable to prove he was the actual shooter.

The trial court concluded Nava was not entitled to relief and denied his petition.  The court reasoned the jury must have found Nava harbored express malice, as evidenced by the fact that it was instructed it could convict him of first degree murder if "the killing was preceded and accompanied by a clear, deliberate *intent on the part of the defendant to kill . . . .*"  (Italics added.)  The court alternatively found that, even if the instruction had not been given, relief was not warranted in light of the evidence showing Nava acted with express malice.

The court summarized its conclusions as follows:  "So I think both the jury found that the defendant formed express[] malice and intended to kill Mr. Mora, and I think the evidence supports the decision, that the defendant—that Mr. Mora be killed, and actively participated in this killing.  So for those reasons, his petition has to be denied."  The court's minute order states it denied the petition because it was "convinced beyond reasonable doubt that the petitioner had express malice when he aided and abetted the murder of Carlos Mora."

Nava timely appealed.

## DISCUSSION

Nava contends, and the Attorney General concedes, the trial court erroneously concluded the jury in his underlying trial convicted him as a direct aider and abettor.  Nava also asserts the court erroneously applied a substantial evidence standard to

5

deny his petition. We agree that the jury in Nava's underlying trial did not necessarily convict him as a direct aider and abettor. We further hold that to establish a petitioner's ineligibility for relief under section 1170.95, the prosecution must prove, beyond a reasonable doubt, each element of first or second degree murder under the law as of January 1, 2019. Here, remand is necessary because it is not clear whether the court applied this standard to deny Nava's petition.[3]

### A. Relevant Law

The Legislature passed SB 1437 in 2018 to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) SB 1437 amended section 188 to require that a principal "shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

---

[3] The Attorney General contends the trial court prematurely denied the petition and remand is necessary so that it can issue an order to show cause and conduct an evidentiary hearing. Nava does not advance this argument on appeal, and rightfully so. The record is clear that the trial court issued an order to show cause as required under section 1170.95, subdivision (c), and conducted an evidentiary hearing as required under section 1170.95, subdivision (d). Although the parties did not present new evidence at the hearing, it is because they stipulated not to do so. The trial court followed the procedures set out in section 1170.95. Accordingly, we do not accept the Attorney General's concession that the matter should be remanded on this basis.

SB 1437 "did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' [Citations.] One who directly aids and abets another who commits a murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted on different grounds Mar. 18, 2020, S260598.)

SB 1437 also added section 1170.95, which sets forth the procedure by which a "person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).) The petition must include a declaration stating the petitioner meets all the requirements for resentencing, including that the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 and 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(3), (b)(1)(A).)

Once a complete petition is filed, the court reviews it and determines whether "the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

7

After the court issues an order to show cause, a hearing is held to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Id.*, subd. (d)(3).)

### B. Analysis

The trial court suggested two bases for denying Nava's petition: (1) the jury necessarily convicted Nava under a direct aiding and abetting theory and (2) the evidence supported Nava's conviction as a direct aider and abettor. We consider each in turn.

### 1. Nava was not necessarily convicted as a direct aider and abettor

As to the trial court's first basis for denying the petition, Nava contends, the Attorney General concedes, and we agree, that the court erred in finding the jury necessarily convicted Nava as a direct aider and abettor. In reaching its conclusion, the trial court relied on language in CALJIC No. 8.20 providing "[i]f you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation . . . , it is murder of the first degree." The court reasoned that, in light of this

8

instruction, the jury must have concluded Nava acted with the intent to kill when it convicted him of first degree murder.

The problem with this reasoning is that CALJIC No. 8.20 does not *require* the jury find the defendant acted with an intent to kill to convict him of first degree murder; rather, it states only that such a finding is sufficient. The instruction, moreover, goes on to state that "[t]o constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." (Italics added.) This reference to "the slayer," rather than "the defendant," permitted the jury to convict Nava of first degree murder under the natural and probable consequences doctrine. (*In re Loza* (2018) 27 Cal.App.5th 797, 805.) Indeed, the trial court apparently reached this same conclusion when it granted Nava's previous petition for habeas corpus.

## 2. It is not clear whether the trial court applied the correct standard

As to the trial court's second basis for denying the petition, Nava insists the court erroneously employed a substantial evidence standard, asking whether there is sufficient evidence from which a jury could convict him of murder under a still-valid theory. He argues the court was instead required to apply a more stringent standard, and he suggests two possibilities.

Nava first posits that a trial court may deny a section 1170.95 petition only if it finds, beyond a reasonable doubt, that the petitioner was actually convicted of murder under a still-valid theory. This is the same harmless error standard applicable when a trial court instructed a jury on alternative theories of guilt, one of which was legally invalid. (See *People v. Chiu,*

9

*supra*, 59 Cal.4th at p. 167.) As applied to this case, it would require the prosecution to prove the jury in Nava's underlying trial convicted him under a direct aiding and abetting theory, rather than a natural and probable consequences theory.

Nava's proposed standard is inconsistent with the statutory scheme in at least two ways. First, section 1170.95, subdivision (a)(3) requires as a necessary condition for resentencing that the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 and 189 made effective January 1, 2019." Under subdivision (d)(3), the prosecution has the burden to "prove beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Reading these provisions together, it follows that a trial court must deny a petition if the prosecution proves, beyond a reasonable doubt, that the petitioner *could be convicted* of first or second degree murder under the law as of January 1, 2019. The standard Nava proposes would require the prosecution prove something different: that the petitioner *was convicted* under a still-valid theory.

Further, the provision in section 1170.95, subdivision (d)(3) permitting the parties to present new evidence to establish their respective burdens would be superfluous if, as Nava contends, the determinative issue is whether the petitioner was convicted under a still-valid theory. Indeed, it would be nonsensical for a court to consider evidence that was not presented in the underlying proceedings to determine on what basis the petitioner was convicted in those proceedings. For these reasons, we reject Nava's contention that a trial court may deny a petition only if it finds the petitioner was actually convicted under a still-valid theory of murder.

10

We are not persuaded by Nava's brief contention that his proposed standard is necessary in order to preserve the petitioner's constitutional right to a jury trial. As the court explained in *People v. Anthony* (2019) 32 Cal.App.5th 1102, "the retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis. Rather, the Legislature's changes constituted an act of lenity that does not implicate [a petitioner's] Sixth Amendment rights. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064 [a trial court may make determinations of fact based on new evidence regarding a petitioner's eligibility for resentencing under Proposition 36 because retroactive application of the benefits from the proposition are a legislative act of lenity that does not implicate [Sixth Amendment] rights].)" (*People v. Anthony,* at pp. 1156–1157.)

Nava proposes in the alternative that a trial court must act as an independent factfinder and may deny a section 1170.95 petition only if it finds the prosecution has proven, beyond a reasonable doubt, the petitioner is guilty of murder under a still-valid theory. There is currently a split of authority as to whether such a finding is required. In *People v. Duke* (2020) 55 Cal.App.5th 113, Division One of this District stated the prosecution need only prove "that the defendant *could* still have been convicted of murder under the new law—that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder [under current law]. This is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' " 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt . . . . [¶] . . .'" [Citation.]' [Citation.]" (*Id.* at p. 123.)

11

The court in *People v. Lopez* (2020) 56 Cal.App.5th 936 (*Lopez*), disagreed with *Duke,* holding the plain language of section 1170.95 requires "the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility . . . ." (*Lopez,* at p. 942.) The court explained the substantial evidence standard is applied "by an appellate court on appeal of a judgment of conviction. It is not a standard of proof to be employed by a fact finder." (*Id.* at p. 950.)

The court in *People v. Rodriguez* ( 2020) 58 Cal.App.5th 227 (*Rodriguez*), reached the same conclusion. The court explained that the legislative goal of section 1170.95—to reform "aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae"—is "best effectuated by resentencing . . . if the evidence, whether from the record of conviction alone or with new and additional evidence introduced at the subdivision (d)(3) hearing, fails to establish beyond a reasonable doubt [petitioners], in fact, acted during the crime with the now-required mental state. To deny resentencing simply because a jury could have found that they may have acted with express malice would frustrate the legislation's purpose." (*Rodriguez,* at pp. 240–241.)

The court further noted that "beyond a reasonable doubt" is the standard of proof considered by the independent factfinder in a criminal trial. Moreover, just two months before the introduction of SB 1437, the California Supreme Court held a prosecutor must prove beyond a reasonable doubt a petitioner is ineligible for resentencing under Proposition 36, the Three Strikes Reform Act of 2012. (See *People v. Frierson* (2017) 4

12

Cal.5th 225, 226.)  In light of this context, the *Rodriguez* court found it unlikely the Legislature would have used "beyond a reasonable doubt" language in SB 1437 had it "intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes."  (*Rodriguez, supra,* 58 Cal.App.5th at p. 242.)

The *Rodriguez* court criticized *Duke*'s "overly literal analysis" of the statutory language, explaining:  "Use of a conditional verb in section 1170.95, subdivision (a)(3), is a normal grammatical construct to express the hypothetical situation an inmate . . . faces when filing the petition—what would happen today if he or she were tried under the new provisions of the Penal Code?  [Citation.]  But once a prima facie case of eligibility has been made and an order to show cause issued, the prosecution's burden is neither conditional nor hypothetical.  Under subdivision (d)(3) the prosecutor must prove 'the petitioner is ineligible for resentencing,' not that he or she might be or could be ineligible."  (*Rodriguez, supra,* 58 Cal.App.5th at p. 241.)

We find the reasoning in *Lopez* and *Rodriguez* persuasive and agree with their conclusion that a trial court must act as an independent factfinder and determine whether the prosecution has established beyond a reasonable doubt the petitioner is guilty of murder under the law as of January 1, 2019.  Our conclusion is also consistent with the Supreme Court's recent decision in *People v. Gentile* (2020) 10 Cal.5th 830, in which the high court explained "section 1170.95 requires the superior court to determine on an individualized basis, after considering any new

13

or additional evidence offered by the parties, whether the defendant is entitled to relief." (*Id.* at p. 855.)

Here, there is some ambiguity as to what standard the trial court applied. Although the court's minute order indicates it was "convinced beyond reasonable doubt that the petitioner had express malice when he aided and abetted the murder of Carlos Mora," its oral statements at the hearing suggest it may have applied a substantial evidence standard. In its concluding remarks, for example, the court noted "the evidence supports *[the jury's] decision*" that Nava formed express malice and intended to kill Mora. (Italics added.) Had the court been acting as an independent factfinder, there would have been no reason to reference the jury's decision. Out of an abundance of caution, and to remove any ambiguity, we remand the case for the trial court to conduct a new hearing and clearly state its findings on the record.

## DISPOSITION

The judgment is reversed. The case is remanded for the trial court to conduct a new hearing under section 1170.95, subdivision (d).

BIGELOW, P. J.

We Concur:

GRIMES, J.          STRATTON, J.

14